UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-23524-CIV-GAYLES
    (15-20131-CR-GAYLES)
MAGISTRATE JUDGE P.A. WHITE

MELISSA PEARL DAVIS,

    Movant,

vs.                                              REPORT OF
                                         MAGISTRATE JUDGE
UNITED STATES OF AMERICA,

    Respondent.
_____/

## I. Introduction

This matter is before the Court on the movant's pro se motion to vacate, filed pursuant to 28 U.S.C. §2255, attacking the constitutionality of her sentence and conviction, entered following a guilty plea in **case no. 12-20527-Cr-Seitz.**

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B),(C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2003-19; and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

Before the Court for review are the movant's §2255 motion (Cv-DE#1), the Presentence Investigation Report ("PSI"), Statement of Reasons ("SOR"), along with all pertinent portions of the underlying criminal file, the written plea agreement (Cr DE# 40), stipulated factual proffer (Cr-DE#41), the change of plea hearing transcript (Cr-DE# 79), and the sentencing hearing transcript (Cr-DE# 80). This court also has before it the Government's response in

opposition to the motion to vacate, with supporting exhibits attached. (Cv-DE# 8).

## II.  <u>Claim</u>

Construing the §2255 motion liberally as afforded *pro se* litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), the movant raises as a sole ground for relief that Amendment 794 to U.S.S.G. §3B1.2, which took effect on November 1, 2015 after her sentencing, makes her eligible for a minor-role reduction to his sentence. (Cv-DE#1).

## III.  <u>Procedural History</u>

The following facts are taken from the Factual Proffer signed by the Petitioner. (CR DE# 41). On or about June 30, 2009, Mitchell incorporated and operated K. Mitch Services, Inc., at 19606 NW 31st Avenue, Miami Gardens, Florida 33056 (<u>Id.</u>:1). While employed at K. Mitch Services, Inc., Mitchell electronically filed an application with the Internal Revenue Service ("IRS") for an Electronic Filing Identification Number ("EFIN") which would allow her to file taxes on other individuals' behalf (<u>Id.</u>). The application was subsequently approved and EFIN numbers 601806, 606601, and 652790 were assigned to K. Mitch Services, Inc. (<u>Id.</u>).

On or about August 8, 2012, Petitioner registered, and began operating, Pebbles Tax and Notary Services, at 99 NW 183rd Street, Suite 104, Miami, Florida 33169 (<u>Id.</u>). Petitioner also electronically filed an application with the IRS for an EFIN (<u>Id.</u>). Her application was subsequently approved and EFIN numbers 608368, 655032, and 657816 were assigned to Pebbles Tax and Notary Services

(<u>Id.</u>).

From June 2009 through July 2014, Petitioner and Mitchell filed fraudulent and unauthorized federal income tax returns using EFINs, including 606601, 608368, and 655032, from both K. Mitch Services, Inc. and Pebbles Notary and Tax Services to the United States Department of Treasury in the names of, and using the social security numbers of, individuals without their authority (<u>Id.</u>:2). In each of the fraudulent and unauthorized tax filings, Petitioner and Mitchell: (i) sought income tax refunds for which they were not entitled; and (ii) directed the IRS to deposit the unlawfully obtained tax refunds into various accounts at UMB, by and through Advent Financial, and Wells Fargo Bank, by and through other financial institutions (<u>Id.</u>). After the tax returns were received and approved by the IRS, UMB, by and through Advent Financial, and Wells Fargo Bank, by and through other financial institutions, authorized Petitioner and Mitchell to load onto debit cards refund anticipation loans ("RALS") in the names of the taxpayers whose names and social security numbers were used to file the fraudulent and unauthorized tax returns (<u>Id.</u>).

Specifically, in the tax years for 2011 and 2012, Petitioner and Mitchell filed fraudulent and unauthorized tax returns with the IRS using the name and social security number that belonged to an individual with the initials "C.G." (<u>Id.</u>). The total tax refund claimed, and ultimately issued, for both years was approximately $9,676 (<u>Id.</u>). However, Special Agent Edwina McNeil from the IRS contacted C.G. and learned that: (i) C.G. is not familiar with K. Mitch Services, Inc. and Pebbles Notary and Tax Service; (ii) C.G. did not know Petitioner or Mitchell; (iii) C.G. did not give permission or authority to Petitioner or Mitchell to use her name or social security number; (iv) C.G. did not give either person

3

permission or authority to file income taxes in her name; and (v) C.G. did not receive two separate tax refunds that totaled $9,676 (<u>Id.</u>).

Finally, the total intended loss from Petitioner and Mitchell's fraudulent and unauthorized income tax filings was over $400,000 (<u>Id.</u>:3).

On March 5, 2015, a Southern District of Florida grand jury returned a seventeen count indictment that charged the Petitioner and her co-conspirator, Kiesha Adderly Mitchell ("Mitchell"), with the following federal violations: (i) one count of conspiracy to defraud the government with respect to claims, in violation of Title 18, United States Code, Section 286; (ii) eleven counts of false, fictitious and fraudulent claims, in violation of Title 18, United States Code, Sections 287 and 2; (iii) one count of possession of fifteen or more unauthorized access devices, in violation of Title 18, United States Code, Sections 1029(a)(3) and 2; and (iv) four counts of aggravated identity theft, in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2 (CR DE# 3). On April 7, 2015, the Petitioner pleaded not guilty to the charge and a jury trial was, subsequently, set for May 4, 2015 (CR DE# 13, 14).

On June 17, 2015, the Petitioner and Mitchell both pleaded guilty to Count one (1), conspiracy to defraud the government with respect to claims, and Count fourteen (14), aggravated identity theft (CR DE# 36, 37).

On June 17, 2015, the Petitioner appeared before the district court for a change of plea hearing (CR DE# 37). During the hearing, the Petitioner signed a factual proffer and plea agreement that was

signed by all parties (Id.). In the plea agreement, Petitioner
agreed to waive "all rights conferred by Section 3742 and 1291 to
appeal any sentence imposed . . . or to appeal the manner in which
the sentence was imposed, unless the sentence exceed[ed] the
maximum permitted by statute" (CR DE# 40:11-12). The Petitioner
pleaded guilty to Count 1, conspiracy to defraud the government
with respect to claims, and Count 14, aggravated identity theft (CR
DE# 37).

Prior to sentencing, a PSI was prepared which revealed as
follows. The base offense level was set at a level 6, pursuant to
U.S.S.G. §2B1.1(a)(2), because the offense involved fraud. (PSI
¶26). The defendant was accountable for an intended loss of
$426,056; because the loss was more than $400,000 but not more than
$1,000,000, the offense level was increased by 14 levels,
§2B1.1(b)(1)(H). (PSI ¶28). Because the offense involved 10 or more
victims, the offense level was increased by two levels,
§2B1.1(b)(2)(A)(i). (PSI ¶29). Three levels were deducted from the
base offense level based on movant's timely acceptance of
responsibility, resulting in a total offense level 19. (PSI ¶¶35-
37).

Next, the probation officer determined that movant had a total
of zero criminal history points, resulting in a criminal history
category I. (PSI ¶40). Based on a total offense level of 19 and a
criminal history category of I, the guideline imprisonment range
was 30 to 37 months. As to Count 14, a term of two years
imprisonment was to run consecutively to any other term of
imprisonment, § 5G1.2(a). (PSI ¶80). Statutorily, As to Count One,
the term of imprisonment was 0 to 10 years, 18 U.S.C. § 286. As to
Count 14, the mandatory term of imprisonment was two years, which
was to run consecutively to any other term of imprisonment 18

U.S.C. § 1028A(a)(1), (b)(2). (PSI ¶79).


On August 3, 2015, Petitioner filed a Memorandum in Aid of Sentencing and Request for a Downward Variance (CR DE# 53). Petitioner argued that she should not receive a 14 level increase (Id.:2). Specifically, Petitioner argued "the Sentencing Commission had proposed amending the loss table to reflect the decrease in the value of a dollar since the table was last amended" (Id.). If the court sentenced Petitioner under the new guidelines, she would receive a 12 level increase as opposed to 14. Thus, her resulting offense level would be 17 and her guideline range would be 24 to 30 months' imprisonment (Id.). Petitioner also requested the court grant a downward variance. Petitioner argued that her personal and family history, family responsibilities, and the nature of the offense warranted a departure (Id.:1-8). The Petitioner failed to raise any argument or objection regarding minor role.


On August 21, 2015, Petitioner appeared before the district court for sentencing (CR DE# 61). The court heard arguments from both sides and the court took into consideration that there would be an amendment to Section 2B1.1 of the Sentencing Guidelines (CR DE# 80:9). According to the court, "I find that the fact that she, [Petitioner], has no previous convictions to be a sufficient basis to vary from the guidelines that are currently in place as well as the background that is set forth in the PSI and that the [Petitioner] describes in her letter." (Id.). However, the court also noted that the Petitioner was not only stealing from the government, but causing other individuals harm (Id.:10). The court noted "[f]or everyone who had a tax return filed in their name, that created a whole new problem for that individual. There are people who relied on their tax returns to eat, to put food on their

table, to take care of their families and when they don't receive that return because a return has already been filed in their name, that makes their lives very difficult, and with the number of victims here, that's also, obviously, something that I have to consider." (Id.). Thereafter, the court sentenced Petitioner to 48 months' imprisonment, to be followed by three years supervised release, restitution in the amount of $219,721 and a $200 special assessment fee. (Id.:12-13).

On August 21, 2015, Petitioner was sentenced to 48 months' imprisonment followed by three (3) years of supervised release and a special assessment fee of $100 (CR DE# 61, 63). On August 24, 2015, Petitioner filed a Notice of Appeal with the Court of Appeals for the Eleventh Circuit (CR DE# 64). On **February 3, 2016**, the Court dismissed Petitioner's appeal. No petition for certiorari review appears to have been filed.

Thus, the judgment of conviction became final on **May 3, 2016,** when the 90-day period for seeking certiorari review with the U.S. Supreme Court expired.[1] The movant had one year from the time his judgment became final, or no later than **May 3, 2017,**[2] within which

---

[1] The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufman, 282 F.3d 1336 (11th Cir. 2002); Wainwright v. Sec'y Dep't of Corr's, 537 F.3d 1282, 1283 (11th Cir. 2007)(conviction final under AEDPA the day U.S. Supreme Court denies certiorari, and thus limitations period begins running the next day). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. Sup.Ct.R. 13; see also, Close v. United States, 336 F.3d 1283 (11th Cir. 2003).

[2] See Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008)(citing Ferreira v. Sec'y, Dep't of Corr's, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)(this Court has suggested that the limitations period should be calculated according to the "anniversary method," under which the limitations period expires on the anniversary of the date it began to run); accord United States v. Hurst, 322 F.3d 1256, 1260-61 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1008-09

to timely file this federal habeas petition, challenging the
judgment of conviction.

The movant returned to this court timely filing her initial
§2255 motion on **August 16, 2016**.[3] (Cv-DE#1).  The government filed
a response to this court's order to show cause wherein it argues
that the petitioner is not entitled to relief on the merits. (Cv
DE# 8).


## IV.   <u>Standard of Review</u>

Because collateral review is not a substitute for direct
appeal, the grounds for collateral attack on final judgments
pursuant to §2255 are extremely limited. A prisoner is entitled to
relief under §2255 if the court imposed a sentence that
(1) violated the Constitution or laws of the United States,
(2) exceeded its jurisdiction, (3) exceeded the maximum authorized
by law, or (4) is otherwise subject to collateral attack. <u>See</u> 28
U.S.C. §2255(a); <u>McKay v. United States</u>, 657 F.3d 1190, 1194 n.8
(11th Cir. 2011).

"Relief under 28 U.S.C. §2255 'is reserved for transgressions

---

(7th Cir. 2000)); <u>see also</u>, 28 U.S.C. §2255.

[3]"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed
filed on the date it is delivered to prison authorities for mailing." <u>Williams
v. McNeil</u>, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); <u>see</u> <u>Fed.R.App.</u> 4(c)(1)("If
an inmate confined in an institution files a notice of appeal in either a civil
or a criminal case, the notice is timely if it is deposited in the institution's
internal mail system on or before the last day for filing."). Unless there is
evidence to the contrary, like prison logs or other records, a prisoner's motion
is deemed delivered to prison authorities on the day he signed it. <u>See</u> <u>Washington
v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001); <u>Adams v. United States</u>,
173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed
and delivered to prison authorities for mailing).

of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). It is also well-established that a §2255 motion may not be a substitute for a direct appeal. <u>Id.</u> at 1232 (<u>citing</u> <u>United States v. Frady</u>, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)). The "fundamental miscarriage of justice" exception recognized in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . "

The Eleventh Circuit promulgated a two-part inquiry that a district court must consider before determining whether a movant's claim is cognizable. First, a district court must find that "a defendant assert[ed] all available claims on direct appeal." <u>Frady</u>, 456 U.S. at 152; <u>McCoy v. United States</u>, 266 F.3d 1245, 1258 (11th Cir. 2001); <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994). Second, a district court must consider whether the type of relief the movant seeks is appropriate under Section 2255. This is because "[r]elief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." <u>Lynn</u>, 365 F.3d at 1232-33 (<u>quoting</u> <u>Richards v. United States</u>, 837 F.2d 965, 966 (11th Cir. 1988)(internal quotations omitted)); <u>see also</u>, <u>Spencer v. United States</u>, 773 F.3d 1132, 1138 (11th Cir. 2014) (<em>en banc</em>), <u>petition for cert. filed</u>, (U.S. Feb. 20, 2015) (No.14-8449). The <u>Spencer</u> court, however, noted that a misapplication of the sentencing guidelines can never rise to the level of a fundamental "miscarriage of justice" necessary to make

a Section 2255 claim cognizable. Spenser, 773 F.3d at 1143-44.

If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him/her or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. §2255. To obtain this relief on collateral review, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." Frady, 456 U.S. at 166, 102 S.Ct. at 1584 (rejecting the plain error standard as not sufficiently deferential to a final judgment). Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). See also Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)(explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous"). As indicated by the discussion below, the motion and the files and records of the case conclusively show that movant is entitled to no relief, therefore, no evidentiary hearing is warranted.

In addition, the party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the §3553(a) factors. United States v. Dean, 635 F.3d 1200, 1209-1210 (11th Cir. 2011)(citing United States v. Talley, 431 F.3d 784, 788

10

(11th Cir. 2005)); <u>United States v. Bernal-Benitez</u>, 594 F.3d 1303, 1320 (11th Cir. 2010).  see also,  <u>United States v. Bostic</u>, 645 Fed.Appx. 947, 948 (11th Cir. 2016)(unpublished).[4] The Eleventh Circuit recognizes "that there is a range of reasonable sentences from which the district court may choose," and ordinarily expect a sentence within the defendant's advisory guideline range to be reasonable. <u>United States v. Talley</u>, <u>supra</u>.

Further, in the case of claims challenging counsel's effectiveness for failing to raise alleged sentencing errors, the movant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. <u>Glover v. United States</u>, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." <u>Id</u>. at 203.

Likewise, a §2255 movant must provide factual support for his/her contentions regarding counsel's performance. <u>Smith v. White</u>, 815 F.2d 1401, 1406-07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the <u>Strickland</u> test. <u>See Boyd v. Comm'r, Ala. Dep't of Corr's</u>, 697 F.3d 1320, 1333-34 (11th Cir. 2012); <u>Garcia v. United States</u>, 456 Fed.Appx. 804, 807 (11th Cir. 2012) (<u>citing Yeck v. Goodwin</u>, 985 F.2d 538, 542 (11th Cir. 1993)); <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991), <u>cert. den'd</u> <u>Tejada v. Singletary</u>, 502 U.S. 1105 (1992); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990)(<u>citing

---

[4]"Unpublished opinion are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)); United States v. Ross, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

## V. Discussion

Here, the movant seeks a sentence reduction, claiming to be entitled to a mitigating role adjustment, pursuant to U.S.S.G. §3B1.2 of the United States Sentencing Guidelines. (Cv-DE#1). Her claim is premised on the Sentencing Commission's enactment last year of Amendment 794, to the commentary of §3B1.2, which became effective on November 1, 2015, after the movant was sentenced. See

Sentencing Guidelines For United States Courts, 80 Fed.Reg. 25,782, 25,782 (May 5, 2015) (stating that on April 30, 2015, the Sentencing Commission proposed amendments to §3B1.2 to become effective November 1, 2015). Movant asserts that Amendment 794 is retroactive because it announced a new substantive rule of law.

U.S. Sentencing Guidelines, Section 3B1.2 provides a decrease to a defendant's base offense level by up to four levels "[i]f the defendant was a minimal participant in any criminal activity," two levels "[i]f the defendant was a minor participant in any criminal activity," and three levels if the defendant's level of participation fell between minimal and minor. See U.S.S.G. §3B1.2. The commentary to §3B1.2 provides that a mitigating role adjustment is available to any defendant "who plays a part in committing the offense that makes him [her] substantially less culpable than the average participant." See id. U.S.S.G. §3B1.2 cmt. n.3(A).

However, Amendment 794 "left the text of §3B1.2 unchanged." United States v. Gomez, ___ F.3d ____, 2016 WL 3615688, at * 3 (5th Cir. July 5, 2016); see also United States v. Quintero-Leyva, 823 F.3d 519, 523 (9th Cir. 2016); United States v. Casas, 632 Fed.Appx. 1003, 1004 (11th Cir. 2015). Rather, the amendment modified §3B1.2's application notes by introducing a list of non-exhaustive factors that a sentencing court should consider in determining whether to apply a mitigating role adjustment. See Quintero-Leyva, 823 F.3d at 523. It is also worth noting that, generally, a court is required to use the guidelines manual in effect on the date a defendant is sentenced. See Dorsey v. United States, 132 S. Ct. 2321, 2332 (2012); U.S.S.G. §1B1.11(a) (requiring use of "the Guidelines Manual in effect on the date that the defendant is sentenced"). Amendment 794 was issued on November 1, 2015. See Quintero-Leyva, 823 F.3d at 521. Thus, it was enacted

13

after to the movant's **August 2015** sentencing hearing. As will be demonstrated below, even if a request for a mitigating role adjustment had been made, the movant has not demonstrated here that the court would have granted such a request. Consequently, movant cannot rely on Amendment 794 to obtain the relief requested.

Also, contrary to the movant's argument, the Sentencing Commission did not make the amendment retroactively applicable to cases on collateral review. See U.S.S.G. §1B1.10(d). Notwithstanding, the amendment also made no substantive change to U.S.S.G. §3B1.2. Rather, it merely "clarified the factors to consider for a minor-role-adjustment." See United States v. Casas, 632 Fed.Appx. 1003, 1004 (11th Cir. 2015). In fact, the Sentencing Commission specifically explained that Amendment 794 is intended only as a clarifying amendment. U.S.S.G. Supp. App. C, Amend. 794 (Reason for Amend.) ("This amendment provides additional guidance to sentencing courts in determining whether a mitigating role adjustment applies.").

Thus, the court must first determine whether the movant's "claim that [his] sentence is contrary to a subsequently enacted clarifying amendment is cognizable under §2255." See Burke v. United States, 152 F.3d 1329, 1331 (11th Cir. 1998). The movant here, like the movant in Burke, is not entitled to relief under §2255. This is so because neither here, nor in Burke, was a direct appeal prosecuted. Id. 152 F.3d at 1331. After movant's sentencing, the Sentencing Commission added a clarifying amendment to the federal sentencing guidelines. Like the movant in Burke, the movant here has moved under §2255 to modify her sentence based on a clarifying change to the guidelines. Id. Yet because "§2255 is not a substitute for direct appeal," nonconstitutional claims, such as clarifying amendments to the Guidelines, "can be raised on

14

collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demand of fair procedure.'" Id. (quoting Reed v. Farley, 512 U.S. 339, 348 (1994)).

Because Amendment 794 is a clarifying amendment resulting in no change to the substantive law, the movant had the opportunity to challenge the denial of a minor-role adjustment at her original sentencing and then on direct appeal, but did not do so.  The PSI clearly delineated no mitigating adjustment for movant's role in the offense. Therefore, this claim is not cognizable here, since the movant has not demonstrated a fundamental defect, nor that a complete miscarriage of justice will result from the failure to consider this claim.[5] While it is true that, in the direct appeal context, the Eleventh Circuit has recently held that Amendment 794 applies retroactively, it has yet to determine whether it applies retroactively to cases on collateral review. See e.g., United States v. Herrera Villareal, __ F.3d __, 2016 WL 6123493 (11th Cir. Sept. 20, 2016)(citing, United States v. Cruickshank, ___ F.3d ____, 2016 WL 5075936 at *7 (11th Cir. Sept. 20, 2016)). On this basis alone, the movant's §2255 motion should be denied.

_____

[5]Movant is cautioned that arguments not raised by movant before the magistrate judge cannot be raised for the first time in objections to the undersigned's Report. See Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)). Thus, "[W]here a party raises an argument for the first time in an objection to a report and recommendation, the district court may exercise its discretion and decline to consider the argument." Daniel v. Chase Bank USA, N.A., 650 F.Supp.2d 1275, 1278 (N.D. Ga. 2009)(citing Williams v. McNeil, 557 F.3d 1287 (11th Cir. 2009). Here, if movant attempts to raise a new claim or argument in support of this §2255 motion, the court should exercise its discretion and decline to address the newly-raised arguments.

The movant is nonetheless entitled to no relief. The Sentencing Guidelines provide for a two-level decrease to a base offense level if a defendant was a minor participant in the criminal activity. U.S.S.G §3B1.2(b). A minor participant is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." Id. cmt. n.5. The Eleventh Circuit, in United States v. De Varon, 175 F.3d 930 (11th Cir. 1999) (en banc), has held that when considering a request for a minor-role reduction, court are to consider: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." De Varon, 175 F.3d at 940. The De Varon court explained that "[t]hese principles advance both the directives of the Guidelines and our case precedent by recognizing the fact-intensive nature of this inquiry and by maximizing the discretion of the trial court in determining the defendant's role in the offense." Id. at 934.

In De Varon, the defendant was a drug courier, who ingested and smuggled 70 heroin-filled pellets into the United States from Colombia. Id. The Eleventh Circuit recognized that "when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." Id. at 942-43. The court, however, declined to "create a presumption that drug couriers are never minor or minimal participants, any more than that they are always minor or minimal." Id.

Instead, the Eleventh Circuit held that "the district court must assess all of the facts probative of the defendant's role in his/her relevant conduct in evaluating the defendant's role in the

16

offense." Id. at 943. Therein, the Eleventh Circuit also offered examples of relevant factors, including the "amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." Id. at 945. The Eleventh Circuit emphasized that the examples are "not an exhaustive list," nor is "any one factor...more important than another," given that the court's determination is factually driven and "falls within the sound discretion of the trial court." Id. Ultimately, the Eleventh Circuit concluded that the trial court had the discretion to deny a minor-role adjustment, after it determined that the defendant was central to the importation scheme, had carried a substantial amount of high-purity heroin on her person, it was unclear from the record that he was less culpable than the other described participant in the scheme, and that he/she had furnished $1,000 of her own money to finance the smuggling enterprise. Id. at 945-46.

Through Amendment 635, the Sentencing Commission, adopted the Eleventh Circuit's De Varon findings that U.S.S.G. §3B1.2 does not automatically preclude a defendant from being considered for a mitigating role adjustment in a case in which the defendant is held accountable under §1B1.3 solely for the amount of drugs the defendant personally handled. See United States v. Cruickshank, 2016 WL 5075936, at *5-8 (11th Cir. 2016); see also, U.S.S.G. App. C, Amend. 635, Reason for Amendment. At the time of Amendment 635, the guidelines instructed that "a court must measure the defendant's role against the relevant conduct for which the defendant is held accountable at sentencing, whether or not other defendants are charged." Id.

In Amendment 794 to the U.S. Sentencing Guidelines, which went into effect in November 2015, the Commission further clarified "the

factors for a court to consider for a minor-role adjustment, and still continue to embrace the approach taken by the Eleventh Circuit in <u>De Varon</u>." <u>Id</u>. Specifically, Application Note 3(C) to U.S.S.G. §3B1.2, provides:

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i)   the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)  the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)  the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v)   the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the

18

criminal activity....

U.S.S.G. Supp. App.C, Amendment 794 (November 1, 2015).

In Cruickshank, the Eleventh Circuit recently recognized that Amendment 794 contained the "non-exhaustive list of factors" which it had previously "delineated in De Varon, including the defendant's role in planning and carrying out the scheme, as well as the amount the defendant stood to be paid." Cruickshank, supra (citing De Varon, 175 F.3d at 945.

**In this case**, given the stipulated factual proffer detailed above, under the factors set forth by the Eleventh Circuit in De Varon, and as clarified by Amendment 794, the court finds that even had the issue been raised at sentencing or on appeal, the movant would not have been entitled to a mitigating role determination. The stipulated factual proffer confirms that the Petitioner and Kiesha Mitchell equally participated in the criminal enterprise. The Petitioner registered Pebbles Tax and Notary Services and filed applications with the IRS under the names of individuals who did not authorize her to do so. Based on her fraudulent and unauthorized actions, she received tax refunds from the IRS. (Cr-DE#41).

Thus, considering all of the facts probative of the defendant's role and her relevant conduct in the offense of conviction, the movant is not entitled to a mitigating role adjustment nor application of Amendment 794. It cannot be said that had the sentencing court considered a mitigating role adjustment under the guidelines, that such a request would have been granted. Thus, there is nothing of record to suggest that the movant's sentence was rendered fundamentally unfair or that it constituted

a miscarriage of justice sufficient to form the basis for collateral relief. <u>See</u> <u>Burke</u>, 152 F.3d at 1332. Therefore, movant is entitled to no relief on this claim.

It should further be noted that this court has considered all of the movant's arguments raised in his §2255 motion. (Cv-DE#1). <u>See</u> <u>Dupree v. Warden</u>, 715 F.3d 1295 (11th Cir. 2013)(<u>citing</u> <u>Clisby v. Jones</u>, 960 F.2d 925 (11th Cir. 1992)). For all of her claims, movant has failed to demonstrate she is entitled to vacatur of her conviction and sentence. Thus, to the extent a precise argument, subsumed within the foregoing ground for relief, was not specifically addressed herein, the claim was considered and found to be devoid of merit, warranting no discussion herein.

In conclusion, the record reveals that movant is not entitled to relief on any of the arguments presented as it is apparent from the extensive review of the record above that movant's guilty plea was entered freely, voluntarily and knowingly with the advice received from competent counsel. Therefore, any argument in the future to the contrary, or any suggestion in objections or otherwise that the plea was involuntarily and/or unknowingly entered, must fail. <u>See</u> <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969); <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970).[6] <u>See also</u> <u>Hill v. Lockhart</u>, <u>supra</u>; <u>Strickland v. Washington</u>, <u>supra</u>. 466 U.S. 668 (1984).

---

[6]It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. <u>Mabry v. Johnson</u>, 467 U.S. 504, 508 (1984).

## VI. <u>Evidentiary Hearing</u>

Movant is also not entitled to an evidentiary hearing on the claims raised in this proceeding. Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his/her allegations, if proved, would establish his/her right to collateral relief. <u>See</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473-75, 127 S.Ct. 1933, 1939-40, 127 S.Ct. 1933 (2007)(holding that if record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing). <u>See also</u> <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1963); <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989), *citing*, <u>Guerra v. United States</u>, 588 F.2d 519, 520-21 (5th Cir. 1979)(holding that §2255 does not require that the district court hold an evidentiary hearing every time a section 2255 petitioner simply asserts a claim of ineffective assistance of counsel, and stating: "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.").

## VII. <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2255 Proceedings, Rule 11(b), 28

U.S.C. foll. §2255.

After review of the record, Movant is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Movant must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). See also Eagle v. Linahan, 279 F.3d 926, 935 (11th Cir. 2001). Because the §2255 motion is clearly time-barred, Movant cannot satisfy the Slack test. Slack, 529 U.S. at 484.

As now provided by Rules Governing §2255 Proceedings, Rule 11(a), 28 U.S.C. foll. §2255: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VIII. Recommendations

Based on the foregoing, it is recommended that the motion to vacate be DENIED on the merits; that no certificate of appealability issue; and, that this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 8<u>th</u> day of November, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Melissa Pearl Davis, <u>Pro Se</u>
     Reg. No. 07640-104
     Alderson
     Federal Prison Camp
     Inmate Mail/Parcels
     Glen Ray Road-Box A
     Alderson, WV 24910


     Maurice A. Johnson
     U.S. Attorney's Office
     99 NE 4th Street
     Miami, FL 33132
     305.961.9454
     Email: Maurice.Johnson@usdoj.gov